UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| THE INDIGENOUS AMERICAN PEOPLE INHABITING THE COUNTY OF WAYNE, MICHIGAN, *et al.*,<br><br>       Plaintiffs,<br><br>v.<br><br>WAYNE COUNTY MUNICIPAL CORPORATION, *et al.*,<br><br>       Defendants. | Case No. 19-cv-12579<br>Honorable Laurie J. Michelson<br>Magistrate Judge David R. Grand |

**OPINION AND ORDER ACCEPTING MAGISTRATE JUDGE'S RECOMMENDATION [62] AND DISMISSING AMENDED COMPLAINT [23] WITHOUT PREJUDICE FOR LACK OF SUBJECT-MATTER JURISDICTION**

Plaintiffs are more than a dozen individuals who own or owned homes in Wayne County, Michigan. They assert that the City of Detroit, Wayne County, and others have collected an unlawful amount of property taxes from them. For some of the plaintiffs, this over-taxation allegedly led to tax foreclosure and the sale of their homes. Plaintiffs, proceeding pro se, have thus sued the City of Detroit, Wayne County, and numerous other local government officials and entities for violations of federal and state law.

Several Defendants have moved to dismiss. Some claim, among other things, that this Court lacks subject-matter jurisdiction over Plaintiffs' claims. (*See e.g.*, ECF No. 35, PageID.724–727; ECF No. 42, PageID.1102–1106.) These motions to dismiss, along with all other pretrial matters, have been referred to Magistrate Judge David R. Grand. (ECF No. 7.) Magistrate Judge Grand recommends that Plaintiffs' claims be dismissed for lack of subject-matter jurisdiction. (ECF No. 62.) Plaintiffs object. (ECF No. 63.)

Having evaluated subject-matter jurisdiction de novo, the Court concludes that it does not have jurisdiction over Plaintiffs' federal-law claims. And it will not exercise jurisdiction over Plaintiffs' state-law claims. This case will thus be dismissed without prejudice.

## I.

### A.

In their complaint, Plaintiffs cite and rely on two law review articles with the same lead author, Professor Bernadette Atuahene. A brief description of each article makes Plaintiffs' claims—drafted by non-lawyers—much easier to understand.

In an article coauthored with Christopher Berry, Atuahene asserts that "[f]rom 2011 to 2015, the Wayne County treasurer foreclosed on approximately 100,000 Detroit properties for unpaid property taxes." Bernadette Atuahene & Christopher Berry, *Taxed Out: Illegal Property Tax Assessments and the Epidemic of Tax Foreclosures in Detroit*, 9 U.C. Irvine L. Rev. 847, 848 (2019). Atuahene and Berry argue that "excessive property tax assessments have played a significant role" in these tax foreclosures. *Id.* The authors provide an example of a Detroiter who purchased a home for $18,000, but a Detroit property tax assessor valued it at $74,000, and thus she had to pay property taxes as if her home were worth $74,000. *Id.* Atuahene and Berry also note that "Detroit's Mayor, Mike Duggan, has on several occasions admitted that the City of Detroit is over assessing its residents." *Id.* at 849. The authors further state that "Detroit is not only over-assessing its residents, but it is doing this in violation of the Michigan Constitution, which states that no property can be assessed at more than 50% of its market value." *Id.*

Plaintiffs also rely on a second article by Atuahene. In that article, Atuahene asserts that between 2009 and 2015, over half of the residential properties in Detroit were valued higher for tax purposes than the 50-percent threshold set by the Michigan Constitution. *See* Bernadette

Atuahene, *"Our Taxes Are Too Damn High": Institutional Racism, Property Tax Assessments, and the Fair Housing Act*, 112 Nw. U. L. Rev. 1501 (2018). Moreover, explains Atuahene, after a local assessor (e.g., from the City of Detroit) appraises the property for tax purposes, county officials (e.g., Wayne County Equalization Division) are supposed to "equalize" the assessments in the county. *Id.* at 1508. She argues that Wayne County has failed to use its equalization authority to correct the unconstitutionally high assessments in Detroit. *Id.* at 1501. In her view, "the property tax malfeasance occurring in Wayne County is a quintessential example of institutional racism." *Id.* at 1504. According to Atuahene, data "shows that predominately African-American cities in Wayne County experience unconstitutional tax assessments and tax foreclosure at a far greater rate than predominately white cities." *Id.* at 1553. Thus, in her view, "Wayne County's equalization policy disparately impacts African-Americans" in violation of the Fair Housing Act. *Id.*

**B.**

With that background, the Court turns to Plaintiffs' complaint. (ECF No. 23.) The Court first summarizes Plaintiffs' factual allegations then their legal claims.

According to Plaintiffs, each owned a home in Wayne County and each was subject to a tax foreclosure. (ECF No. 23, PageID.442–452.) Absent from the allegations, however, is any information about the specific purchase prices of their individual homes, the market values of their homes, or the tax assessments on these homes. Some of Plaintiffs' homes may have been sold in a tax foreclosure sale that was held in September 2019, days after this lawsuit was filed. (*See* ECF No. 2, PageID.76.) (The Magistrate Judge recommended, and this Court agreed, that Plaintiffs were not entitled to an ex parte order halting the property auction. *See Indigenous Am. People Inhabiting Cty. of Wayne, Mich. v. Wayne Cty. Mun. Corp.*, No. 19-12579, 2019 WL 5061048, at *1 (E.D. Mich. Oct. 9, 2019).) Plaintiffs refer to themselves as "The Indigenous American People

3

Inhabiting Wayne County, Michigan," but it does not appear that this is a formal organization. Further, while Plaintiffs originally sued under "The Indigenous American People Inhabiting Wayne," Plaintiffs have since amended their complaint to sue in their own names. (*Compare* ECF No. 1, *with* ECF No. 23.)

Roughly, Plaintiffs factual allegations fall into four categories: (1) their properties were overvalued for tax purposes, (2) a property-tax exemption was concealed from them, (3) the Wayne County Treasurer is not properly in office, and (4) "other." The Court details these in turn.

*One.* Plaintiffs' complaint includes a number of allegations about how the appraisals of their properties for tax purposes were too high. Plaintiffs say that contrary to state law, the City of Detroit did not appraise their properties annually (which, presumably, would have led to lower valuations and, in turn, lower property taxes). (ECF No. 23, PageID.386, 389.) They also say, similar to Atuahene's arguments in her articles, that their properties were appraised for taxes at a value far higher than market value. (ECF No. 23, PageID.387.) And, say Plaintiffs, Detroit Mayor Duggan was "aware of the discrimination but failed to stop it." (ECF No. 23, PageID.387.) Plaintiffs, also like Atuahene, say that the Wayne County Equalization Division or the Wayne County Board of Commissioners failed to use their equalization authority to correct for the City of Detroit's high appraisals. (ECF No. 23, PageID.379.) According to Plaintiffs, Wayne County's failure to equalize has led to a racially disparate impact. (ECF No. 23, PageID.389.) Further, say Plaintiffs, the Wayne County Treasurer proceeded with tax foreclosures on homes despite knowing that they had been appraised too high for tax purposes. (ECF No. 23, PageID.379.) And, echoing Atuahene, Plaintiffs say that Wayne County and the City of Detroit have engaged in "institutionalized racism" by overvaluing, for tax purposes, properties with a true market value of $9,000 or less. (ECF No. 23, PageID.391.)

*Two.* Plaintiffs also assert that Eric Sabree, the Wayne County Treasurer since 2016, the City of Detroit, Wayne County, and possibly others, concealed a property tax exemption for homeowners with low income. (ECF No. 23, PageID.381, 387.) Plaintiffs include copies of the public notice of tax foreclosure and claim that those notices never included any information about the exemption. (ECF No. 34, PageID.381–382, 475.)

*Three.* Plaintiffs also allege that Sabree is not lawfully the Wayne County Treasurer because he served as interim treasurer and because former Wayne County Treasurer, Raymond Wojtowicz, improperly retired or resigned from the position. (ECF No. 23, PageID.376–380.) According to Plaintiffs, Cathy Garrett, the Wayne County Clerk, knew Sabree could not lawfully become Wayne County Treasurer but still administered the oath of office. (ECF No. 23, PageID.377, 379.) Thus, in Plaintiffs' view, "Sabree foreclosed on thousands of residential propert[ies] [of] class members . . . when he should not have been in the seat of Wayne County Treasurer." (ECF No. 23, PageID.379.)

*Four*. Plaintiffs make additional allegations regarding the loss of their homes. They say that Wayne County and possibly other Defendants deemed their properties abandoned so that they could take title and, further, concealed from Plaintiffs the fact that the properties had been deemed abandoned. (ECF No. 23, PageID.382, 385.) Plaintiffs further say that when their properties were sold at the tax foreclosure auction, Wayne County unlawfully kept the surplus greater than the amount of tax owed. (ECF No. 23, PageID.384.) Plaintiffs also assert that Wayne County is not licensed to perform debt collection. (ECF No. 23, PageID.380) Plaintiffs also allege that "Wojotowicz committed fraud when he stole revenues from [them] by having the public make the checks payable to himself instead of the State of Michigan." (ECF No. 23, PageID.393.)

Based on these allegations, Plaintiffs make several legal claims against about a dozen local government actors and entities. As far as the claims under federal law, Plaintiffs assert violations of the Fair Housing Act and the Fourth, Fifth, and Eighth Amendments of the Constitution. Plaintiffs' Fair Housing Act claim, apparently against the City of Detroit, Wayne County, and related entities, appears to be the disparate impact theory presented by Atuahene. (*See* ECF No. 23, PageID.389.) Plaintiffs' Fifth Amendment claim is based on the Takings Clause: they say that by keeping the surplus from the tax-foreclosure sale of their homes, Wayne County has engaged in an unlawful taking. (ECF No. 23, PageID.384.) Plaintiffs' Fourth Amendment claim is difficult to decipher. They stress that the text of the Fourth Amendment ensures that their "property" is not subject to "unreasonable seizure." (ECF No. 23, PageID.383, 385.) Perhaps then, Plaintiffs' Fourth Amendment claim is based on their allegations that they paid too much in property taxes and that their homes were unlawfully deemed abandoned or sold. Plaintiffs also have claims under state law, including fraud, negligence, and a state statute regarding annual property assessments.

## C.

All pretrial matters in this case have been referred to Magistrate Judge Grand to either decide the matter (if it is not dispositive) or make a recommendation to this Court on how to decide the matter (if it is dispositive). On February 25, 2020, he issued an order on five non-dispositive motions and a report and recommendation on three dispositive motions. (*See* ECF No. 62; *see also* ECF No. 61.)

Via his report, the Magistrate Judge recommends that this Court grant motions to dismiss filed by Garrett (ECF No. 33), Wayne County (and related defendants) (ECF No. 34, 35), and the City of Detroit (and related defendants) (ECF No. 42). (*See* ECF No. 62, PageID.1456.) In particular, the Magistrate Judge believes that the *Rooker-Feldman* doctrine strips federal courts of

6

subject-matter jurisdiction over Plaintiffs' claims. (ECF No. 62, PageID.1450–1453.) Alternatively, the Magistrate Judge believes that federal courts lack subject-matter jurisdiction under the Tax Injunction Act and the associated principles of comity. (ECF No. 62, PageID.1453–1456.)

Via his order, the Magistrate Judge denied Plaintiffs' three motions to amend their (already amended) complaint. (ECF No. 62, PageID.1445 n.3.) Plaintiffs also sought reconsideration of the denial of their motion for default, which the Magistrate Judge thought was moot given that there was no subject-matter jurisdiction. (ECF No. 62, PageID.1445 n.4.) The Magistrate Judge likewise denied as moot Plaintiffs' motion to strike the statement of death filed by Wojtowicz. (ECF No. 62, PageID.1445 n.5.)

Plaintiffs now object to all of the Magistrate Judge's rulings and recommendations. (ECF No. 63.)

## II.

When a party objects to a magistrate judge's order, a district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). When a party objects to a magistrate judge's report and recommendation, a district judge reviews the issues raised by the objections de novo; but the district judge has no obligation to review un-objected to issues. *See* Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at \*8 (E.D. Mich. Apr. 16, 2012).

## III.

### A.

Usually, subject-matter jurisdiction is the first order of business, for if a court lacks it, it has no power to opine on the merits of a suit. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S.

83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

But a court must decide whether it has subject-matter jurisdiction based on something. Typically, that something is the complaint. In this case, that would be Plaintiffs' November 2019 amended complaint. But maybe not: Plaintiffs have thrice sought to amend that complaint (ECF No. 38, 47, 51) and while the Magistrate Judge denied those requests (ECF No. 62, PageID.1445–1446 n.3), Plaintiffs object to all three denials (ECF No. 63, PageID.1461). So the first order of business in this case is determining which complaint controls.

A good place to start is with the Magistrate Judge's order. The Magistrate Judge explained that the changes that Plaintiffs wanted to make to their complaint did not make their legal claims more viable. (ECF No. 62, PageID.1445–1446 n.3.) According to the Magistrate Judge, the changes were to include Plaintiffs' home addresses, to correct the spelling of a plaintiff's name, to change the caption to include plaintiffs who were part of the complaint but not the caption, and to add the Wayne County Board of Commissioners because the Wayne County Equalization Division may have not been the correct defendant for some claims. (*See id.*) Because these proposed changes to the complaint would not have made Plaintiffs' legal claims more viable, the Magistrate Judge denied the motions to amend as futile. (*See id.*)

This Court is not persuaded that the Magistrate Judge's futility determination is erroneous, let alone clearly so. *See* Fed. R. Civ. P. 72(a). For one, Plaintiffs' objections are too conclusory to trigger review. Plaintiffs say, "Pursuant to Rule 72 of the Federal Rules of Civil Procedure the Indigenous American People Inhabiting the County of Wayne Michigan objects to the Magistrates Order . . . Denying Plaintiffs' Motions to Amend (ECF Nos. 38,47,52)." (ECF No. 63,

PageID.1461.) But that is all Plaintiffs say. And that is not enough. *See Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001) ("The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object.").

In any event, this Court has reviewed the three motions to amend, and just as the Magistrate Judge stated, the proposed amendments are more form than substance. (*See* ECF No. 38, PageID.929; ECF No. 47, PageID.1159–1160; ECF No. 52, PageID.1337–1338.) And more to the point, even if the Court permitted these proposed amendments, the additions would not affect the subject-matter-jurisdiction analysis.

So the Court will overrule Plaintiffs' objections to having their three motions to amend denied and will assess subject-matter jurisdiction by examining the allegations of the November 2019 amended complaint (ECF No. 23).

**B.**

The Magistrate Judge concluded in his Report and Recommendation that Plaintiffs' claims were barred by the *Rooker-Feldman* doctrine because they are asking the Court to overturn judgments of foreclosure. (ECF No. 62, PageID.1450–1453.)

While Plaintiffs *might* be asking a federal court to unwind a state court judgment (*see* ECF No. 23, PageID.394), this Court is not certain that all of Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine. The doctrine only bars a claim if the "source of the plaintiff's injury is the state-court judgment itself." *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020). If the source of the plaintiff's injury is something else, "such as a third party's actions," then *Rooker-Feldman* does not deprive a federal district court of jurisdiction. *Id.* Here, it seems that at least some of Plaintiffs' claims stem not from a state-court judgment but from Defendants' actions. For example, Plaintiffs claim that properties owned by African Americans (or other

minorities) were overvalued for tax purposes more often than properties owned by Caucasians. And Plaintiffs blame City of Detroit tax assessors and the Wayne County Equalization Division or the Wayne County Board of Commissioners for this alleged disparate impact.

In any event, the Court need not and does not decide whether the *Rooker-Feldman* doctrine bars Plaintiffs' claims. *See VanderKodde*, 951 F.3d at 409 (Sutton, J., concurring) ("Absent a claim seeking review of a final state court judgment, a federal court tempted to dismiss a case under *Rooker-Feldman* should do one thing: Stop. If the temptation lingers, the court should try something else: Reconsider. And if that does not work, the court should exercise jurisdiction anyway and ask the U.S. Supreme Court to reverse it."). This is because the Court finds that it lacks subject-matter jurisdiction under the Tax Injunction Act and related comity principles.

## C.

The Tax Injunction Act ("TIA") states: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Thus, the TIA "creates a jurisdictional barrier to the federal courts for claims of declaratory or injunctive relief brought by a party aggrieved by a state's administration of its taxing authority." *Pegross v. Oakland Cty. Treasurer*, 592 F. App'x 380, 384 (6th Cir. 2014); *see also Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 522 (1981) (noting that in passing the Tax Injunction Act, Congress wanted "to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes").

And apart from the TIA, comity principles preclude federal courts from awarding damages for state tax collection that violates the federal Constitution.

In *Fair Assessment in Real Estate Association, Inc. v. McNary*, property owners and a taxpayer association sued under 42 U.S.C. § 1983, claiming that St. Louis County officials had "deprived them of equal protection and due process of law by unequal taxation of real property." 454 U.S. 100, 105–06 (1981). The plaintiffs believed that because county officials had not appraised older properties on a regular basis, properties with new improvements were being valued for taxes at a higher percentage of their market value than properties without new improvements. *Id.* at 106. The property owners sought "actual damages in the amount of overassessments . . . and punitive damages." *Id.* The taxpayer association sought "damages in the amount of expenses incurred in efforts to obtain equitable property assessments for its members." *Id.*

The Supreme Court recognized that the suit presented a clash of two lines of authority. On the one hand, both the TIA and Supreme Court precedent "reflect[ed] the fundamental principle of comity between federal courts and state governments that is essential to 'Our Federalism,' particularly in the area of state taxation." *Id.* at 103. On the other hand, "§ 1983 cut a broad swath. By its terms it gave a federal cause of action to prisoners, taxpayers, or anyone else who was able to prove that his constitutional or federal rights had been denied by any State." *Id.* at 103–04.

The Supreme Court resolved these "two divergent lines of authority" in favor of comity principles. *See id.* at 116. The Court recited several cases where federal courts had refused to use their equitable powers to enjoin state taxation (or other functions intimate to the states). *Id.* at 107–113. The plaintiffs argued that unlike those cases, they did not seek to enjoin the administration of St. Louis County's tax system but instead sought damages. *Id.* at 113. In the Court's view, that distinction made no difference: "Petitioners will not recover damages under § 1983 unless a district court first determines that respondents' administration of the County tax system violated petitioners' constitutional rights. . . . We are convinced that such a determination would be fully

11

as intrusive as the equitable actions that are barred by principles of comity." *Id.*; *see also Pegross*, 592 F. App'x at 385 ("The doctrine of comity, which is more embracive than the TIA, forbids suits for damages under 42 U.S.C. § 1983 brought to remedy allegedly unconstitutional state tax assessment or collection.").

Here, Plaintiffs' federal claims, if correct, would require this Court to find that Defendants' "administration of the County tax system violated [Plaintiffs'] constitutional rights" or other federal laws. *See Fair Assessment*, 454 U.S. at 113.

Success on Plaintiffs' claims under the Fourth, Fifth, and Eighth Amendments would require this Court to find that the policies and practices that Defendants used to collect property taxes from Plaintiffs were unconstitutional. Plaintiffs say that the property taxes collected and the associated loss of their homes were "excessive fine[s]" under the Eighth Amendment and "unreasonable . . . seizure[s]" under the Fourth Amendment. (ECF No. 23, PageID.384.) Thus, by definition, those claims require a determination that Defendants collected an unlawful amount of money or real property as a tax. *See Dillon v. Mississippi*, 376 F. App'x 421, 422 (5th Cir. 2010) (finding lack of subject-matter jurisdiction over claims of discriminatory taxation in violation of the First, Fourth, Fifth, Eighth and Fourteenth Amendments). Plaintiffs also say that when their homes were sold to pay outstanding property taxes, Defendants kept the surplus greater than what they owed in violation of the Fifth Amendment's Takings Clause. But the Sixth Circuit has found that the TIA and comity principles prevent that very claim from being litigated in federal court. *See Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 815, 822–23 (6th Cir. 2017).

What of Plaintiffs' Fair Housing Act claim? That claim is not pursuant to § 1983. And while the Plaintiffs ask this Court to declare Defendants' tax collection practices unlawful under

the FHA, the FHA is a statute and so they do not ask this Court to declare Defendants' practices unconstitutional.

But Plaintiffs have not explained why those distinctions matter. And courts and commentators do not think they do. *See Edwards v. Meisner*, No. 18-CV-13488, 2019 WL 78890, at *9 (E.D. Mich. Jan. 2, 2019) (finding that TIA and comity deprived court of jurisdiction over FHA claim based on tax foreclosure); *United States v. Cty. of Nassau*, 79 F. Supp. 2d 190, 191, 197 (E.D.N.Y. 2000) ("If the federal policies against discrimination embodied in Section 1983 are not a sufficient basis to defeat the application of the Tax Injunction Act, this Court sees no reason why similar non-discrimination policies in the Fair Housing Act should warrant a different result."); Atuahene, *Our Taxes are Too Damn High*, *supra*, at 1501 ("Due to the Tax Injunction Act, plaintiffs cannot litigate an FHA claim [based upon discriminatory property tax administration] in federal courts.").

Plaintiffs make a number of other allegations about a property tax exemption, abandoned property classifications, Sabree's status as the Wayne County Treasurer, and checks written out to Wojtowicz that probably form the basis of state-law claims rather than federal-law ones.

But even if these allegations somehow amount to federal claims, success on those claims would likewise require a finding that Defendants' tax collection violated federal law. Starting with the allegations about a property tax exemption, Plaintiffs apparently believe that Defendants concealed an exemption they were entitled to; but if that is true, then this Court would have to find that Defendants collected too much in property taxes. As for Plaintiffs' claim that Defendants wrongly deemed their properties abandoned, admittedly, that claim sounds unrelated to taxes. But under Michigan law, local government can accelerate a tax foreclosure by deeming the property abandoned. *See* Mich. Comp. Laws § 211.964(1)(b). Given the theme of Plaintiffs' complaint is

property taxes, it is likely that Plaintiffs' claim is based on Defendants deeming their properties abandoned for tax foreclosure purposes. And Plaintiffs challenge Sabree's status as the Wayne County Treasurer as a means of showing that he lacked authority to complete tax foreclosures. (ECF No. 23, PageID.382.) Finally, as for Plaintiffs' claim that Wojotowicz committed fraud by having checks made payable to him rather than the State of Michigan, those checks were apparently property tax payments. So, again, Plaintiffs' claim would require this Court to find that Defendants collected taxes unlawfully.

The relief that Plaintiffs seek underscores that their suit is one a federal court should not entertain out of respect for state sovereignty. Plaintiffs would like this Court to declare that they hold "Fee Simple absolute interest" in their homes. (ECF No. 23, PageID.394.) But it appears that Plaintiffs seek this relief as a means of unwinding a tax foreclosure sale. Plaintiffs also ask this Court to enjoin Defendants from continuing their "illegal and unlawful acts." (ECF No. 23, PageID.394.) Reading the complaint as whole, it appears that these "acts" relate to the collection of property taxes. Each plaintiff also seeks $200 million in damages because he or she has "lost lands to this unlawful tax foreclosure scheme, [has] lost lands through an over assessed tax induced mortgage foreclosure, or [is] paying over assessed taxes." (ECF No. 23, PageID.394.) Thus, Plaintiffs tie the compensation they seek to the allegedly unlawful tax collection practices.

In arguing for subject-matter jurisdiction, Plaintiffs rely on a footnote in *Fair Assessment*. (ECF No. 63, PageID.1469.) The footnote reads, "We need not decide in this case whether the comity spoken of would also bar a claim under § 1983 which requires no scrutiny whatever of state tax assessment practices, such as a facial attack on tax laws colorably claimed to be discriminatory as to race." 454 U.S. at 107 n.4. Plaintiffs suggest that via this footnote, the federal court door remains open to their claims.

But this case is nothing like the one described in the footnote. Plaintiffs do not make any colorable claim that Detroit, Wayne County, or Michigan property tax laws are discriminatory on their face. And Plaintiffs do ask this Court to scrutinize the City of Detroit's and Wayne County's tax assessment and collection practices.

Plaintiffs also seek to open the federal court doors to their claims by analogizing this case to *Hibbs v. Winn*, 542 U.S. 88 (2004). There, an Arizona law allowed a taxpayer to deduct from her taxes the amount of money she had given to a "school tuition organization" (up to $500). *Id.* at 95. The plaintiffs sought to enjoin taxpayers from taking that deduction where the taxpayer had given money to a school tuition organization that in turn had given money to attend a religious school. *Id.* at 99. The Supreme Court held that the TIA did not remove the plaintiffs' claim from the jurisdiction of the federal courts. Far from halting tax collection, the plaintiffs' suit, if successful, would have allowed Arizona to collect more in taxes. *See id.* at 96, 99–100. The Court also noted that "in enacting the TIA, Congress trained its attention on taxpayers who sought to avoid paying their tax bill by pursuing a challenge route other than the one specified by the taxing authority." *Id.* at 104–05. But the plaintiffs were "not contest[ing] their own tax liability" and were not "seek[ing] to impede Arizona's receipt of tax revenues." *Id.* at 93. So the TIA was no bar to suit in federal court.

*Hibbs* is of no help to Plaintiffs. Plaintiffs do not seek to prevent others from claiming a tax deduction. And Plaintiffs do contest their own tax liability.

Before concluding, it is worth noting that § 1341 and comity principles prevent federal court intervention into state tax collection practices only if the state provides "a plain, speedy and efficient remedy." 28 U.S.C. § 1341; *see also Fair Assessment*, 454 U.S. at 116 n.8. But Plaintiffs make no argument that their claims could not be pursued in local or state tribunals. And it appears

15

local and state tribunals provided means for challenging the tax monies collected. *See Pegross*, 592 F. App'x at 385; Atuahene, *Taxed Out*, *supra*, at 865–69 (describing how a property tax assessment may be appealed in Michigan).

Accordingly, the Court finds that § 1341 and related comity principles deprive this Court of subject-matter jurisdiction over all of Plaintiffs' federal-law claims.

As for Plaintiffs' state-law claims, the Court declines to exercise supplemental jurisdiction over those. *See* 28 U.S.C. § 1367(c)(3); *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.").

## IV.

For the reasons given, this Court does not have subject-matter jurisdiction over Plaintiffs' federal claims that, at bottom, ask a federal court to find that the City of Detroit and Wayne County have imposed and collected property taxes contrary to federal law. And this Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims. Accordingly, this Court ADOPTS IN PART the Magistrate Judge's report and ACCEPTS his recommendation to dismiss this case for lack of subject-matter jurisdiction. Defendants' motions to dismiss (ECF Nos. 33, 34, 35, 42) are DISMISSED AS MOOT. This case is DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

Dated: April 20, 2020

                                          s/Laurie J. Michelson
                                          LAURIE J. MICHELSON
                                          UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 20, 2020.

                                                s/Erica Karhoff
                                                Case Manager to the
                                                Honorable Laurie J. Michelson